A couple of years ago, Tina Hornbeak was killed in a car accident. Lunsford is a prison in Philly, based on an old version of it. The jury is instructed to find a murder that doesn't exist. Instructions are often wavering and vague. The jury does not continue to claim over evidence for conspiracy and prosecution of innocence. Marcella Lunsford is a household prosecutor for the jury, and has followed me through the rest of my life. For a long time, I have been a huge fan of her artists, primarily Lonnie and John LeWitt as well as Jerry. At the end of the first couple of weeks, I have confessed to a court held in the early 2000s because there was another form of murder in which he claimed his guilty. Of course, there are so many different juries for murders. So, what's wrong with the jury? There are special circumstances. Lonnie didn't want any weight. You don't get weight in the state court. What we have to do, we only have to see the person on the release warrant. We don't have to know what's going on in the sentence. We do have to decide the case. There are special circumstances where the jury is found guilty of murder by Lonnie LeWitt. You're not in the state jury. You're in a different state court. The only chance for a fine here is if it's not a threat. So, it's possible that there is a substantial and jury-suspecting or influence on the verdict. There have been cases in the county, cases in the states, which have stated that if you can't say Lonnie's guilty, Lonnie's guilty. So, whether the jury may or may not even know about the jury, this court has to determine whether or not it's a person who deserves to be found guilty in the state jury. That is not possible to do. And, here, we can't tell for certain. So, the jury found Lonnie's guilty. There are special circumstances. We all agree that she was Lonnie LeWitt. Right? So, that's a special circumstance. The statute actually is even more difficult to read than the regular instruction of Lonnie LeWitt. So, why was it that recently, for the trial, that in part of the case, it was concluded that the person who was responsible for receiving the hearing, although it was not part of the charge, it was part of the case, and decided that Lonnie was Lonnie LeWitt. She was Lonnie LeWitt. We all agree that she fulfilled all the elements of the Lonnie LeWitt claim, and that's a special circumstance. It's a special circumstance. So, I'm not going to go into the theory of the first degree murder. It's the statute's first degree murder. I mean, the instruction's first degree murder. The question is, why was it that Lonnie LeWitt had instructions for this whole, what is the purpose of the hearing, and then, why did she lose the hearing? That's a great question. It's a great question. It's a great question. Well, let's say that there were no instructions. Yes, there was no instructions. I have a chart of all the information in front of the jury. I have a chart that the attorneys of Lonnie and Lonnie LeWitt, who do this all the time, is the records that support all the instructions and all the instructions themselves show all the instructions. They show what the jury has to pass down. That's all we know for certain. It's not a show of submission. It's a question of other jurors that start to look at it and compare it. It's a special circumstance, right, which is the theory of the first degree murder. By Lonnie LeWitt, there is a more different, more clear distinction there. In the very first sentence of the instructions, the first degree murder theory of Lonnie LeWitt is Calhoun 5.1, and it says that the first degree murder by Lonnie LeWitt is when the killing was while at the wing or immediately thereafter. Special circumstance, again, in the very first sentence of that instruction, which is Calhoun 6.28, says that it's a murder committed by means of the wing, and it indicates to a coronary juror that it has to be part of the means used, but that's not the same as saying it's while, while you wing, or immediately thereafter. And that's a very important juror's view. Again, we have to put ourselves in the mind of a coronary juror when we're playing and looking at the instructions, because that's all we know for sure about Calhoun. Here, there was no evidence of what happened when the killing occurred. It was pretty specific. He saw Douglas sitting in his car about three hours after the killing, and before he knew it until the murder was committed, and since he's sitting in the car, about six or three seconds before he was killed, he was lying on the toilet, and that was a very fast thing to do. During that time period, when he was in his car, he may well have been, and he certainly was, and the jury could work something out that that was a means for the jury to assess Calhoun and determine whether or not the killing was committed while he was waiting for a meeting with the press. We had no evidence about what happened. No one saw Douglas approach the house. No one saw what happened to the interviewee and being killed in the stairwell. Douglas could have, sort of, just come up to him, approach him, say, you better not testify against me. And he'd say to him, I'll take the murder of your child and make it into an argument. So, I heard him speak to us, and Douglas approached him and said, well, I mean, we don't, we don't actually have evidence against you. I understand that, but you're not the source of support here. This is not a case for murder. Can you just tell me whether there were any means of special services? Did you do this for money? Did you do it for anything? The Court of Appeals, and this might be a weird thing to do, because it seems to me there's only a percentage, I think this is the main point, he said that the jurisdiction was harmless for the following reasons, because the requirements for collecting and pointing to special services are more stringent than those for money and money murder. And if finding special services allegations are true, the jury also has zero impact if one juror was guilty of first-degree murder. So, I think the entire theory of finding and pointing to that doesn't necessarily serve the history of the court here. I agree with you. Your jurors are so correct that looking at evidence of special services, they create more injunctions than if the murder has been committed intentionally. But the evidence in the Court of Jurisdiction starts with evidence from the Court of Jurisdiction that points to instructions shown in their further shows. And here, there is difference in language. First-degree murder says, well, I'll find a way, or I'll do it thereafter. Whereas special services says, I'll do it now, and I'll do it in the Court of Jurisdiction if it's true. So, I mean, it's a nuanced difference, but I do wonder if the jurors are good or not. I actually understand how those are different. Because if you're lying in a way in order to kill somebody, you're either doing it at the time of, or shortly thereafter, and you're just watching somebody use the words or just something, I don't understand why you're watching the juror when he's just actually trying to convince you that you're lying and not doing the murder. Can you answer that question? I can't answer that at all. But it's consensual in this case that the suspect was sitting in his car for a couple of hours in the middle of the morning, and later, the murder was committed. From here, you understand that flying away from me is used in the Court of Jurisdiction without attempting to find a line or any other... suspect. It's a decision. It's a decision. It's a decision. I see my daughter and her friends and her family. I guess that her friends don't want to talk to me. I don't want to talk to them. What you did is not in the least pertinent, perhaps, to the area, perhaps, to any other building for any size. When you just came down, you didn't know that the subject was present and brought into a position. So, when you saw him sitting in his car, the suspect appeared to show that he used a while on the plane to work in India after he used that position of sitting in his car to express his opinion. And this is a situation that there's no chance. This is a serious and unconstitutional murder. It's not possible to have a mature line on the state of Florida that doesn't exist at this time and that doesn't exist in India. That's a serious and unconstitutional violation. In India, it's been very easy for the jurors to say, oh, he's stupid. Easy. You know he's stupid. He's pursuing a juvenile felony on the pretext of murdering a child. He's been on the phone for at least six kills. The first three were three or four. They all succeeded while he was in India. You can't just stop him if you don't want to stop him. He specifically called on anyone else that he could have found while he was in certain states and asked him such and such and said that he's actually not the same as the ones who were in the murder area. So here he shows this as a general problem to the jurors. He has to demonstrate more of a constrictional error in his state law. Thank you. And you also have to demonstrate that the state courts have system personnel and law employees involved. How much substantive design are in this situation? So it wasn't just a matter of the state law error. It's a general constitutional error in terms of injuring crime and sentencing and stuff. That's what I'm saying. As far as reasonable justification, that's true. Well, but you're arguing on what you're saying are correct instructions. You're saying that the two are designed slightly differently and therefore there's prejudice. You're not saying none of those two are wrong. Let's assume that both of these instructions were correct and not wrong. Why are you arguing why are you insisting on this? It seems to me you're arguing for us all. The standard instructions show that they're worse. Where do these instructions come from? The error here is that it's about how secure you can get the instructions from the court and the decision was reasonable. We're looking for a standard which assumes that the differences in the questions are substantial and reasonable. So we're looking for a standard  assumes that the difference in the questions are substantial and reasonable. We're looking for a standard which assumes that the differences in the questions are substantial and reasonable. We're  a standard which assumes that the  in the questions are substantial and reasonable. We're looking for a standard which assumes that the differences in the questions are substantial and reasonable. And that is the           So that's what we're looking for. And that's what the standards are. So we're looking for a set   that are  with what we're looking for. So we've been looking for a set of criteria that are consistent with what  for. So    for a set of we're looking for. So for a  of criteria that    that    what we're looking for.            Some of the most frequent criteria in this list are consistent with what we're looking for. Okay           list. Okay so the most frequent criteria in this list are consistent with what we're looking for. Okay so
judges: Graber, Murguia, Collins